*3*

United States District Court
Southern District of Texas
FILED

DEC 2 3 2002

Michael N. Milby
Clerk of Court

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

MICHAEL SANCHEZ, P.H. KING,       )
GILBERTO MEDELLIN, HECTOR         )
QUINTANILLA, LUZ BONILLA, on      )
Behalf of themselves and others similarly )
Situated                          )
                                  )
                Plaintiffs,       )          Case No. **B-02-235**
                                  )
v.                                )
                                  )
ALLSTATE CORPORATION,             )
ALLSTATE INSURANCE COMPANY,       )
ALLSTATE TEXAS LLOYD'S,           )
ALLSTATE FIRE AND CASUALTY        )
INSURANCE COMPANY, ALLSTATE       )
PROPERTY AND CASUALTY             )
INSURANCE COMPANY, ALLSTATE       )
COUNTY MUTUAL INSURANCE           )
COMPANY, ALLSTATE INDEMNITY       )
COMPANY, JOHN LESLEY, agent,      )
JAIME PENA, agent, and JOHN       )
TERRY, agent                      )
                                  )
                Defendants.       )

**DEFENDANTS' MOTION FOR A STAY**
**OF ALL PROCEEDINGS IN THIS ACTION**
**PENDING FINAL DECISION BY THE JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION ON TRANSFER OF THIS ACTION**

Defendants, by their attorneys, hereby move the Court for a stay of all proceedings

pending a final ruling by the Judicial Panel on Multidistrict Litigation (the "MDL Panel") on the

transfer of the current action to the United States District Court for the Middle District of

Tennessee as a potential tag-along action.

In support, Defendants state as follow:

1.      On June 19, 2002  pursuant to 28 U.S.C. § 1407, the MDL Panel consolidated in

the Middle District of Tennessee two putative nationwide class actions, stating that both actions

allege that "Allstate violated the notification and disclosure requirements of the Fair Credit

Reporting Act . . . in its use of consumer reports for qualification, underwriting and rate-setting

processes for certain policies of insurance." See Exh. A attached.  The consolidated case has

been assigned MDL Docket No. 3:02-md-1457 ("MDL 1457").  Judge Aleta A. Trauger is

assigned to MDL 1457.

2.      On July 1, 2002, the MDL Panel transferred to MDL 1457 several other putative

nationwide class actions pending in the Middle District of Florida and Northern District of

Georgia.  See Exh. B attached.  These actions similarly involved allegations regarding Allstate's

allege failure to notify or disclose to consumers Allstate's use of consumer reports in its

underwriting and rate-setting practices.  The MDL Panel found that these actions "involve

questions of fact which are common to the actions previously transferred to the Middle District

of Tennessee and assigned to Judge Trauger." Id.

3.      On November 6, 2002, Plaintiffs filed this instant action in the District Court of

Cameron County, Texas.  Defendants have removed this action to this Court and have

contemporaneously filed this Motion to Stay.

4.      As in the actions transferred to MDL 1457, the Plaintiffs allege that Allstate fails

to provide adequate notice when it uses consumer reports, specifically credit reports, to

underwrite and rate automobile and homeowners insurance policies.  While Plaintiffs do not

expressly bring their action under the Fair Credit Reporting Act ("FCRA"), their claims that

"Allstate and Defendants Agents . . . failed to adequately disclose to policyholders that they used

their credit history to increase their premiums and failed to disclose the effect of the

policyholder's score and credit history on the amount of premiums charged or coverage

obtained" and "further failed to adequately disclose that the policyholders had the right to contest

or update their score or the effect of their credit history on their score" brings this action squarely within the scope of MDL 1457. (Compl. at pp. 4-5, attached as Exh. C.)

5.    Despite their artful attempt to plead around the FCRA, a straightforward comparison of Plaintiffs' own proposed class definition to a proposed class definition advanced by the plaintiffs in MDL 1457 clearly illustrates that Plaintiffs challenge the same practices currently consolidated for pretrial purposes in the Middle District of Tennessee. Plaintiffs' proposed class definition employs the key language found in FCRA and includes all "consumers in the State of Texas who have had adverse actions taken against them by Defendants . . . in connection with existing or applied for insurance, based in whole or in part on information contained in a consumer report, and who have not been provided with the proper notice and disclosure as required by law." (Compl. at pp. 9-10, attached as Exh. C.) This definition is virtually identical to a proposed class definition in MDL 1457, which includes: "Residents of the United States of America who . . . were denied, canceled, or charged increased rates or other sub-optimal terms for insurance . . . based in whole or in part on information in consumer reports without adequate disclosures being provided to them as required by the Fair Credit Reporting Act." (MDL 1457 Third Am. Compl. at ¶ 68, attached as Exh. D.)

6.    Because this action involves common questions of fact with the actions previously transferred to MDL 1457, Defendants, pursuant to 7.5(e) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, simultaneously herewith, notified the MDL Panel of this potential "tag-along action." Defendants seek to have this action transferred and consolidated with MDL 1457. See Exh. E attached.

7.    A temporary stay of all proceedings in this action pending a final decision by the MDL Panel is necessary to avoid duplicative and conflicting discovery and potentially inconsistent and prejudicial pretrial rulings.

8.      Courts routinely grant stays pending decisions by the MDL Panel on whether to create a multidistrict docket and transfer cases to that docket.  See, e.g., Moore v. Wyeth-Ayerst Laboratories, No. CIV.CCB-02-2691, 2002 WL 31558416, at *2 (D. Md. Nov. 14, 2002); U.S. Bank, Nat'l Ass'n v. Royal Indemnity Co., No. CIV.A.3:02-CV-0853-P, 2002 WL 31114069, at *2 (N.D.Tex. Sept. 23, 2002); Knearem v. Bayer Corp., No. 02-2096-CM, 2002 WL 1173551, at *2 (D. Kan. May 7, 2002); American Seafood, Inc. v. Magnolia Processing, Inc., Nos. 92-1030, 92-1086, 1992 WL 102762, at *2 (E.D. Pa. May 7, 1992); Arthur-Magna, Inc. v. Del-Val Financial Corp., No. 90-4378, 1991 WL 13725, at *1-*2 (D. N.J. Feb. 1, 1991); Egon v. Del-Val Financial Corp., No. 90-4338, 1991 WL 13726, at *1-*2 (D. N.J. Feb. 1, 1991); Rosenfeld v. Hartford Fire Ins. Co., Nos. 88 CIV. 2153 (MJL), 88 CIV. 2252 (MJL), 1988 WL 49065, at *2 (S.D.N.Y. May 12, 1988); Portnoy v. Zenith Laboratories, No. 86-3512, 1987 WL 10236, at *1 (D. D.C. Apr. 21, 1987).

9.      The power to stay proceedings is within the discretion of this Court.  See, e.g., Royal Indemnity, 2002 WL 31114069, at * 2.  In determining whether to grant a stay, courts focus on "(1) the hardship and inequity to the moving party if the action is not stayed, (2) the potential prejudice to the non-moving party, and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated."  Id.  See also American Seafood, 1992 WL 102762, at *2; Arthur-Magna, 1991 WL 13725, at *1.  These factors weigh heavily in favor of a stay here.

10.     Discovery in MDL 1457 has commenced and is ongoing.  Unless this action is stayed pending a ruling by the MDL Panel, Defendants may be required to proceed with discovery and other pretrial proceedings, that are likely to overlap with, and ultimately be superseded by, discovery and pretrial proceedings in MDL 1457.  Specifically, pretrial discovery in both this action and the actions pending in MDL 1457 is likely to involve depositions of the

same Defendant employees in addition to extensive and voluminous duplicative document productions. For discovery and pretrial proceedings to occur in the context of a single, isolated case may unnecessarily complicate the management of the multidistrict proceeding, pose the risk of inconsistent rulings, and be prejudicial to Defendants.

11.    Further litigation in this Court prior to a final ruling by the MDL Panel on transfer of this action could compromise the coordinated pretrial process intended in multidistrict proceedings under 28 U.S.C. § 1407.

12.    Plaintiffs will suffer no prejudice from the requested stay. This action has just been removed to this Court. This Court has made no substantive rulings, nor are any substantive rulings necessary. Should Plaintiffs request a remand of this action back to state court, this Court need not determine that issue prior to a decision by the MDL Panel on transfer. See Moore, 2002 WL 31558416, at *2 ("Because it furthers the goals of judicial economy and consistency, the motion to remand will be stayed until the Judicial Panel on Multidistrict Litigation can rule on [defendant's] motion to transfer."). If this case is transferred to MDL 1457, any motion to remand should be decided by the Middle District of Tennessee, as the transferee court. See Knearem, 2002 WL 1173551, at * 1 (granting stay and concluding that jurisdictional issue could be decided by transferee court should MDL Panel order transfer); Boudreaux v. Metropolitan Life Ins. Co., No. 95-138, 1995 WL 83788, at *2 (E.D. La. Feb. 25, 1995) (same). See also Ivy v. Diamond Shamrock Chemicals Co., 901 F.2d 7, 9 (2nd Cir. 1990) (citations omitted) ("We hold, therefore, that the MDL Panel has jurisdiction to transfer a case in which a jurisdictional objection is pending, that objection to be resolved by the transferee court."); In re Air Crash Disaster at Florida Everglades on December 29, 1972, 368 F. Supp. 812, 813 (Jud.Pan.Mult.Lit., Dec. 14, 1973) (transferring action for consolidated pretrial proceedings and finding that transferee judge has power to decide questions of remand).

13.     A stay will permit all parties to receive the benefits of coordinated pretrial proceedings, which will ultimately help to speed, not slow, the pace of this case.

For all of the foregoing reasons, Defendants respectfully request that this Court enter a stay of all proceedings in this action pending a final decision by the MDL Panel on transfer of this action to MDL 1457 as a tag-along action.

Dated: December 23, 2002

Respectfully submitted by

Rene Oliveira
State Bar No. 15254700
Roerig, Oliveira & Fisher, L.L.P.
855 West Price Road, Suite 9
Brownsville, Texas 78520-8786
Telephone:     (956) 542-5666
Telecopy:     (956) 542-0016

**Counsel for Defendants**

## CERTIFICATE OF SERVICE

I certify that a true and exact copy of the foregoing has been mailed, first-class, postage prepaid, on this 23 day of December 2002, to:

Suzanne M. Schwarz
Law Offices of Suzanne Schwarz, P.C.
P.O. Box 532044
Harlingen, Texas 78553

Benigno "Trey" Martinez
Martinez, Barrera & Martinez, L.L.P.
1201 E. Van Buren
Brownsville, Texas 78520

_____
Rene Oliveira

**FILED**
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

JUN 2 4 2002

BY_____
DEPUTY CLERK

*RELEASED FOR PUBLICATION*

*DOCKET NO. 1457*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 1 9 2002

FILED
CLERK'S OFFICE

3:02-md-1457

## *BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

## *IN RE ALLSTATE INSURANCE CO. UNDERWRITING AND RATING PRACTICES LITIGATION*

*Larry Daniels, Sr., et al. v. Allstate Insurance Co., et al., M.D. Florida, C.A. No. 8:01-64*
*Woodrow Shelton, Jr. v. Allstate Insurance Co., M.D. Tennessee, C.A. No. 3:01-1502*

## *BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, MOREY L. SEAR, BRUCE M. SELYA, JULIA SMITH GIBBONS, D. LOWELL JENSEN AND J. FREDERICK MOTZ, JUDGES OF THE PANEL*

### *TRANSFER ORDER*

This litigation currently consists of two actions pending, respectively, in the Middle District of Florida and the Middle District of Tennessee.[1] Before the Panel is a motion, pursuant to 28 U.S.C. § 1407, brought by defendants Allstate Insurance Company and one of its subsidiaries, Allstate Indemnity Company (collectively Allstate), for coordinated or consolidated pretrial proceedings of the two actions in the Middle District of Tennessee or, in the alternative, in the Northern District of Illinois. Plaintiff in the Middle District of Tennessee action does not oppose the motion for transfer to that district. Plaintiffs in a potential tag-along action in the Northern District of Georgia also do not oppose transfer to the Middle District of Tennessee. Plaintiffs in the Middle District of Florida action initially supported centralization in the Middle District of Florida; however, at the hearing session, these plaintiffs agreed to centralization in the Middle District of Tennessee.

On the basis of the papers filed and hearing session held, the Panel finds that these two actions involve common questions of fact, and that centralization under Section 1407 in the Middle District of Tennessee will serve the convenience of the parties and witnesses and promote the just

---

[1] In addition to the two actions presently before the Panel, the Panel has been notified of two additional related actions pending in the Middle District of Florida and one other related action pending in the Northern District of Georgia. These actions and any other related actions will be treated as potential tag-along actions. *See* Rules 7.4 and 7.5, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001).

- 2 -

and efficient conduct of this litigation. Plaintiffs in both actions seek certification of a putative nationwide class and allege that Allstate violated the notification and disclosure requirements of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, in its use of consumer reports for the qualification, underwriting and rate-setting processes for certain policies of insurance. Centralization under Section 1407 is thus necessary in order to eliminate duplicative discovery; prevent inconsistent pretrial rulings, particularly with respect to class certification; and conserve the resources of the parties, their counsel and the judiciary.

The Middle District of Tennessee stands out as the appropriate transferee forum for this litigation. We note that i) all parties now agree upon Section 1407 centralization in the Middle District of Tennessee, and ii) a judge with a favorable caseload has been presiding over the action pending there for several months.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the action pending outside the Middle District of Tennessee is transferred to the Middle District of Tennessee and, with the consent of that court, assigned to the Honorable Aleta A. Trauger for coordinated or consolidated pretrial proceedings with the action pending in that district.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUL - 1 2002

FILED
CLERK'S OFFICE

*DOCKET NO. 1457*

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE ALLSTATE INSURANCE CO. UNDERWRITING AND RATING PRACTICES LITIGATION

*Teresita Enriquez v. Allstate Insurance Co., et al.*, M.D. Florida, C.A. No. 8:02-345
*Cynthia Silhol v. Allstate Insurance Co., et al.*, M.D. Florida, C.A. No. 8:02-470
*Geoffrey W. Cochran, et al. v. Allstate Insurance Co.*, N.D. Georgia, C.A. No. 1:02-315

## CONDITIONAL TRANSFER ORDER (CTO-1)

On June 19, 2002, the Panel transferred one civil action to the United States District Court for the Middle District of Tennessee for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. With the consent of that court, all such actions have been assigned to the Honorable Aleta A. Trauger.

It appears that the actions on this conditional transfer order involve questions of fact which are common to the actions previously transferred to the Middle District of Tennessee and assigned to Judge Trauger.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Middle District of Tennessee for the reasons stated in the order of June 19, 2002, ____F.Supp.2d____ (J.P.M.L. 2002), and, with the consent of that court, assigned to the Honorable Aleta A. Trauger.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Middle District of Tennessee. The transmittal of this order to said Clerk shall be stayed fifteen (15) days from the entry thereof and if any party files a notice of opposition with the Clerk of the Panel within this fifteen (15) day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

*Michael J. Beck*

Michael J. Beck
Clerk of the Panel

ALL-STATE® LEGAL  800-222-0510    E0911    RECYCLED

CAUSE NO. 2002-11-4446-A

| | | |
|---|---|---|
| MICHAEL SANCHEZ, P.H. KING, GILBERTO MEDELLIN, HECTOR QUINTANILLA, LUZ BONILLA, on behalf of themselves and others similarly situated | § § § § § § | IN THE DISTRICT COURT OF |
| VS. | § § § | CAMERON COUNTY, TEXAS |
| ALLSTATE CORPORATION, ALLSTATE INSURANCE COMPANY, ALLSTATE TEXAS LLOYD'S, ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, ALLSTATE COUNTY MUTUAL INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, JOHN LESLEY, agent, JAIME PENA, agent, and JOHN TERRY, agent | § § § § § § § § § § § § § | |



107th JUDICIAL COURT

## PLAINTIFFS' ORIGINAL CLASS ACTION PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW PLAINTIFFS MICHAEL SANCHEZ, P.H. KING, GILBERTO MEDELLIN, ROBERT AUSTIN, AND LUZ BONILLA, individually and in a representative capacity on behalf of a class of persons similarly situated, complaining of and against Defendants Allstate Corporation, Allstate Insurance Company, Allstate Texas Lloyd's, Allstate Indemnity Company, Allstate Fire and Casualty Insurance Company, Allstate Property and Casualty Insurance Company, Allstate County Mutual Insurance Company, John Lesley, as agent, Jaime Pena, as agent, and John Terry, as agent, and in support thereof, upon knowledge as to themselves and their own acts and otherwise upon information and belief, for their Class Action Petition, respectfully shows the

DEC. 2. 2002. 10:00AM    LITIGATION & EMP LAW    NO. 2961    P. 5
John R Terry Insurance    956 686 23    P.4

Court and Jury as follows:

## I.

## JURISDICTION

The relief sought by the Plaintiffs is subject to the jurisdiction of this Honorable Court. The damages suffered and sought to be recovered by the Plaintiffs in this class exceed the minimum jurisdictional limits of this Court.

## II.

## VENUE

Venue is proper in Cameron County, Texas as all or a substantial part of the events or omissions giving rise to the claim occurred in such county. Furthermore, venue is proper in Cameron County, Texas, because the Plaintiff Gilberto Medellin and Defendant John Lesley resided in Cameron County, Texas, at the time their breach of express and implied warranties accrued, pursuant to Sections 15.032 and 15.033 of the Texas Civil Practice and Remedies Code and Section 17.56 of the Texas Business and Commerce Code.

## III.

## PARTIES

### Plaintiffs

Plaintiff Michael Sanchez is an adult citizen and a resident of Hidalgo County, Texas, and brings this action both in his individual capacity and on behalf of a class of persons similarly situated in the State of Texas pursuant to Texas Rules of Civil Procedure Rule 42 and Texas Insurance Code Section 21.21.

Plaintiff P.H. King is an adult citizen and a resident of Hidalgo County, Texas, and brings this action both in his individual capacity and on behalf of a class of persons similarly situated in the State of Texas pursuant to Texas Rules of Civil Procedure Rule 42 and Texas Insurance Code

Section 21.21.

   Plaintiff Gilberto Medellin is an adult citizen and a resident of Cameron County, Texas, and brings this action both in his individual capacity and on behalf of a class of persons similarly situated in the State of Texas pursuant to Texas Rules of Civil Procedure Rule 42 and Texas Insurance Code Section 21.21.

   Plaintiff Hector Quintanilla is an adult citizen and a resident of Hidalgo County, Texas, and brings this action both in his individual capacity and on behalf of a class of persons similarly situated in the State of Texas pursuant to Texas Rules of Civil Procedure Rule 42 and Texas Insurance Code Section 21.21.

   Plaintiff Luz Bonilla is an adult citizen and a resident of Hidalgo County, Texas, and brings this action both in his individual capacity and on behalf of a class of persons similarly situated in the State of Texas pursuant to Texas Rules of Civil Procedure Rule 42 and Texas Insurance Code Section 21.21.

Defendants

   Defendant Allstate Corporation is the parent company of Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire and Casualty Insurance Company, Allstate Property and Casualty Insurance Company, and Allstate Texas Lloyd's, and as is liable for the conduct alleged herein. Allstate Corporation, Allstate Insurance Company, Allstate Texas Lloyd's, Allstate Fire and Casualty Insurance Company, Allstate Property and Casualty Insurance Company, Allstate County Mutual Insurance, and Allstate Indemnity Company and all other Allstate subsidiaries and affiliates have acted in the violations complained of and will be referred to as either "Allstate" or "Defendants Allstate." Defendants Allstate are foreign entities that have their principal place of business in the State of Illinois and may be served through their registered agent, C.T. Corporation System at 350

North St. Paul Street, Dallas, Dallas County, Texas 75201.

Defendant John Lesley is an insurance agent for the Defendants Allstate and is an adult individual who may be served with process at his place of business located at 795 Paredes Line Road, Brownsville, Texas 78520. Defendant John Terry is an insurance agent for the Defendants Allstate and is an adult individual who may be served with process at his place of business located at 4500 N. 10th Street, #30, McAllen, Texas 78504. Defendant Jaime Pena is an insurance agent for the Defendants Allstate and is an adult individual who may be served with process at his place of business located at 1826 E. Griffin Parkway, Mission, Texas 78572. Defendants Lesley, Terry, and Pena may be referred to as "Defendants Agents."

## IV.

## FACTS AND VIOLATIONS

Defendants Allstate and Defendants Agents provide and have provided insurance products, including automobile, property, and homeowners coverage, to Texas consumers. The Defendants Allstate and Defendants Agents utilize credit reports of individuals as a significant factor in determining the individual's eligibility, renewal, and premiums for its insurance policies.

As part of such process, the Defendants Allstate and Defendants Agents use the credit reports to assign different levels of creditworthiness on insureds and applicants. Defendants Allstate and Defendants Agents use such levels of creditworthiness to quote and charge higher premiums for applicants and insureds or place such applicants and insureds with affiliates with a higher risk. Defendants Allstate and Defendants Agents categorize applicants and insureds based on their credit report.

Defendants Allstate and Defendants Agents had a fiduciary duty to their policyholders to act with good faith and fair dealing. Defendants Allstate and Defendants Agents, however, failed to adequately disclose to policyholders that they used their credit history to increase their premiums and

DEC. 2. 2002 10:00AM    LITIGATION & EMP LAW    NO. 2961    P. 8
Nov. 21, 2002 5:55PM    John R Terry Insurance    856 686 23XX 1000    P. 7

failed to disclose the effect of the policyholder's score and credit history on the amount of premiums charged or coverage obtained. Defendants Allstate and Defendants Agents further failed to adequately disclose that the policyholders had the right to contest or update their score or the effect of their credit history on their score.

In 2001, the Defendants increased the premiums for Plaintiff P.H. King's home after accessing his credit report. Defendants Allstate and Defendant Terry, although aware that they had increased his premiums after conducting a credit check, failed to properly disclose and notify him of such adverse action. The Defendants Allstate and Defendants Agents accessed Plaintiff Michael Sanchez' credit report eighteen times and then denied him insurance. The Defendants Allstate and Defendants Agents failed to notify him that he was denied because of his credit or that they had accessed his report numerous times.

The Defendants Allstate and Defendants Agents took adverse action as to Plaintiffs Luz Bonilla, Gilberto Medellin, and Hector Quintanilla. Defendants Allstate and Defendants Agents increased Plaintiff Gilberto Medellin increased premiums but failed to disclose to him that credit was involved. After providing quotes to Plaintiff Hector Quintanilla, the Defendants Allstate and Defendant Pena denied Plaintiff insurance but failed to disclose that he had been denied based on his credit score. Only several weeks later, after questioning employees at the Defendant Pena's office did Hector Quintanilla learn that he had been denied because of his credit. As to all of the above, Defendants Allstate and Defendants Agents failed to provide the required notice and disclosure after such adverse action was taken.

By their conduct, the Defendants Allstate and Defendants Agents engaged in an unconscionable action or course of action. The Defendants took advantage of their position to a grossly unfair degree and are therefore liable to the Plaintiffs. The conduct of the Defendants

Allstate and Defendants Agents resulted in a gross disparity between the value actually received and the value promised.

Defendants Allstate and Defendants Agents failed to provide Plaintiffs with adequate notice when there was a denial, increase in premium, renewal or failure to receive preferential treatment based in whole or in part on information contained in the credit reports obtained by Defendants. Defendants Agents failed to inform the Plaintiffs that their credit report would directly bear on their ability to obtain insurance.

Defendants Allstate and Defendants Agents have used and continue to use credit reports on individuals and then take adverse actions against consumers based in whole or in part on their credit reports, and they fail to provide notice and disclosure. Plaintiffs believe that the Defendant Allstate and Defendant Agents have engaged in such conduct as to applicants, renewals, issuance of, cancellation of, and reinstatement of insurance polices.

The Defendants Allstate's conduct constitutes false, misleading and deceptive acts in violation of the Texas Deceptive Trade Practices/Consumer Protection Act (The "DTPA"). Furthermore, Plaintiffs are "consumers" with the meaning of the DTPA, and Defendants Allstate, through their acts and omissions, violated the terms of the DTPA including one or more of the following respects:

a.    Falsely representing that goods or services are of a particular standard, quality, or grade;

b.    Failing to disclose information concerning goods or services that was known at the time of the transaction if the failure to disclose was intended to induce the consumer into a transaction the consumer would not have entered into had the information been disclosed;

    c.      Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

    d.      Misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction; and

    e.      Engaging in an unconscionable action or course of action that was a producing cause of damages.

Plaintiffs also allege Defendants Allstate committed unlisted deceptive trade practices.

The foregoing representations violate Section 17.46(b) of the DTPA and are actionable.

The Defendants Agents' conduct constitutes false, misleading and deceptive acts in violation of the DTPA. Plaintiffs are "consumers" with the meaning of the DTPA, and Defendants Agents, through their acts and omissions, violated the terms of the DTPA including one or more of the following respects:

    a.      Falsely representing that goods or services are of a particular standard, quality, or grade;

    b.      Failing to disclose information concerning goods or services that was known at the time of the transaction if the failure to disclose was intended to induce the consumer into a transaction the consumer would not have entered into had the information been disclosed;

    c.      Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

    d.      Misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction; and

      e.    Engaging in an unconscionable action or course of action that was a

              producing cause of damages.

Plaintiffs also allege Defendants Agents committed unlisted deceptive trade practices.

     The foregoing representations violate Section 17.46(b) of the DTPA and are actionable

     Plaintiffs bring this action against Defendants Allstate for breach of contract, breach of the

duty of good faith and fair dealing, and breach of Article 21.21 of the Texas Insurance Code in

connection with the insurance policies sold by Defendants Allstate. Plaintiffs have a direct cause

of action against Defendant Allstate under Article 21.21 of the Texas Insurance Code, including,

but not limited to, violations of Article 21.21 Sections 4 (1), (2), (7), and (11) of the Texas

Insurance Code.

     Plaintiffs also bring this action against Defendants Agents for breach of contract, breach

of the duty of good faith and fair dealing, and breach of Article 21.21 of the Texas Insurance

Code in connection with the insurance policies sold by Defendants Agents. Defendant Agents

failed to state material facts that were necessary to make other statements made not misleading,

considering the circumstances under which the statements were made. Plaintiffs have a direct

cause of action against Defendant Agents under Article 21.21 of the Texas Insurance Code,

including, but not limited to, violations of Article 21.21 Sections 4 (1), (2), (7); and (11) of the

Texas Insurance Code.

     Plaintiffs, on behalf of themselves and on behalf of the putative class, seek injunctive relief

requiring the Defendants Allstate and Defendants Agents to provide appropriate notification to

consumers under the circumstances described herein.

     The conduct of Defendants Allstate and Defendant Agents, as described herein, was a

producing cause of damages to the Plaintiffs. In addition, because such conduct involved

knowing violations of the DTPA, Plaintiffs are entitled to recover additional statutory damages and treble damages in an amount exceeding the minimum jurisdictional limits of this court.

Plaintiffs also seek the amount of their actual damages plus court costs and reasonable and necessary attorneys' fees. Plaintiffs also seek treble damages as to Defendants' conduct that was knowingly committed in violation of the Texas Insurance Code.

Plaintiffs seek as damages monetary compensation for all actual, special, out-of-pocket losses, mental stress, consequential, punitive, and other pecuniary damages or losses which they may be justly entitled, including, but not limited to a refund of the insurance premium charged.

Plaintiffs further seek punitive damages against the Defendants for the Defendants' willful actions. Defendants, their agents, employees, and assignees knew or had actual subjective awareness of their actions but nevertheless proceeded with conscious indifference in an effort to maximize sales and profits at the expense of policyholders and in conscious disregard of the foreseeable harm caused by their actions. This conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, or willful and intentional disregard of an extreme degree of risk that the Plaintiffs would incur substantial injury. The Plaintiffs as well as others similarly situated therefore, are entitled to punitive damages for such malice. Because of all of the above and foregoing, the Plaintiffs have been damaged jointly ad severally, and against Defendants for exemplary damages.

## V.

## CLASS ACTION ALLEGATIONS

Plaintiffs bring this action against Defendants as members of the following proposed class:

All consumers in the State of Texas who have had adverse actions taken against them by Defendants Allstate Corporation, Allstate Insurance Company, Allstate Texas Lloyds, Allstate Fire and Casualty Insurance Company, Allstate Property and Casualty Insurance Company, Allstate County Mutual Insurance Company and/or Allstate

Indemnity Company in connection with existing or applied for insurance, based in whole or in part on information contained in a consumer report, and who have not been provided with the proper notice and disclosure as required by law.

Excluded from the proposed class are the Defendants, any entity in which any Defendant has a controlling interest, and any agents, employees, officers, and/or directors of the Defendants or any other such entities and their representatives, heirs, successors and/or assigns.

On information and belief, the members of the class number at least in the thousands and the class is therefore so numerous that it would be impracticable to individually join all class members as parties to this action.

There are questions of law and fact common and of general interest to the class.

The claims of the named Plaintiffs are typical of the claims of the class.

The Plaintiffs will fairly and adequately protect the interests of the members of the class and have no interest antagonistic to those of other class members. Plaintiffs have retained class counsel competent to prosecute class actions, and they are financially able to represent the class.

The class action is superior to other available methods for the fair and efficient adjudication of this controversy since it is impracticable to join all members of the class. The interest of judicial economy favor adjudicating the claims for the Plaintiff class rather than on an individual basis.

There are common questions of law and fact in the action that relate to affect the rights of each member of the class and the relief sought is common to the entire class.

Class action treatment is proper and this action should be maintained as a class action because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudication with respect to individual class members which would establish incompatible standards of conduct for the Defendants as the party opposing the class; and/or adjudications with respect to individual class members which would establish incompatible standards of conduct for the Defendants as the party opposing the class; and/or adjudications with respect to

individual class members which would as a practical matter substantially impair or impede the ability to other members not parties to the adjudications to protect their interests.

Questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Said common questions include, but are not limited to, the following:

a. Whether Defendants took adverse actions against the Plaintiffs and class members in connection with existing or applied for insurance based in whole or in part on information contained in consumer reports;

b. Whether Defendants provided Plaintiffs and class members with the proper notice and disclosure;

c. Whether Defendants' conduct as described herein is willful;

d. Whether Defendants' conduct as described herein was negligent;

e. Whether Defendants' conduct as described herein violated the Texas Deceptive Trade Practices Act;

f. Whether Defendants' conduct as described herein violated the Texas Insurance Code;

g. Whether Defendants have engaged in a systematic pattern or practice of failing to provide the required notification and disclosure to Plaintiffs and class members;

h. Whether Plaintiffs and class members are entitled to injunctive relief;

i. Whether Plaintiffs and class members are entitled to damages; and

j. Whether the Plaintiffs and class members are entitled to class wide relief as set forth in this complaint.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs, individually and in a representative capacity on behalf of all persons similarly situated, demand judgement against Defendants for:

1. Compensatory damages in an amount to be proven at trial;

2. Punitive Damages;

3. Reasonable and necessary attorneys fees;

4. Taxable costs of suit;

5. Pre and post judgment interest; and

6. Such other and further relief as the Court may deem necessary or appropriate.

Respectfully Submitted,

Suzanne M. Schwarz
State Bar No. 17872300
LAW OFFICES OF SUZANNE SCHWARZ, P.C.
P.O. Box 532044
Harlingen, Texas 78553
Tel: (956) 440-0340
Fax: (956) 440-8252

Benigno "Trey" Martinez
State Bar No. 00797011
MARTINEZ, BARRERA, & MARTINEZ, L.L.P.
1201 E. Van Buren
Brownsville, Texas 78520
Tel: (956) 546-7159
Fax: (956) 544-0602
ATTORNEY FOR PLAINTIFFS

D

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE ALLSTATE INSURANCE | ) | MDL Docket No. |
| COMPANY UNDERWRITING AND | ) | 3:02-md-1457 |
| RATING PRACTICES LITIGATION | ) | |
| | ) | |
| THIS PLEADING REFERS TO: | ) | Shelton v. Allstate |
| | ) | 3-01-1502 |
| Shelton v. Allstate | ) | |
| 3-01-1502 | ) | Complaint – Class Action |

### THIRD AMENDED COMPLAINT

Plaintiffs Woodrow Shelton Jr., Larry Daniels, Sr., Geoffrey Cochran, Jeanne Cochran, Teresita Enriquez, Cynthia Silhol, Marsha D. Myers and Ronald Kevin Myers bring this action, individually and on behalf of the classes of persons defined below, against Defendants, Allstate Insurance Company and Allstate Indemnity Company, pursuant to their investigations, upon knowledge as to themselves and their own acts, and otherwise upon information and belief, and for their complaint allege as follows:

### THE PARTIES, JURISDICTION, AND VENUE

1.      Defendants, Allstate Insurance Company ("Allstate Insurance") and Allstate Indemnity Company ("Allstate Indemnity") (hereinafter collectively referred to as "Allstate"), are both Delaware corporations with their principal places of business in Illinois.

2.      Allstate Insurance Company is a wholly owned subsidiary of the Allstate Corporation, a Delaware company. Allstate Indemnity Company is a wholly owned subsidiary of Allstate Insurance Company. The Allstate defendants are headquartered in Northbrook, Illinois. The Allstate defendants write insurance in 49 states, including Tennessee, Georgia, Florida, and the District of Columbia. In 1999, the Allstate defendants collectively reported net written premiums

in excess of $17 billion. In Florida alone, the Allstate defendants collectively reported net written premiums in excess of $1.2 billion.

3.      The Allstate defendants utilize standard form insurance policies which were created by Allstate Insurance Company and which are issued to the nationwide sales force of Allstate Insurance Company from the home office of Allstate Insurance Company in Illinois. All of the Allstate defendants' policyholders have the same rights, and the Allstate defendants have the same obligations under the terms of that form policy.

4.      Defendants have agents and other representatives throughout the country, including in the state of Tennessee, and in Sumner and Davidson counties specifically.

5.      Both Allstate Insurance and Allstate Indemnity are authorized to do and are doing business in the State of Tennessee.

6.      Plaintiff Woodrow Shelton, Jr., is a resident of Tennessee.

7.      Plaintiff Larry Daniels, Sr., is a resident of Florida.

8.      Plaintiff Geoffrey Cochran is a resident of Georgia.

9.      Plaintiff Jeanne Cochran is a resident of Georgia.

10.     Plaintiff Teresita Enriquez is a resident of Florida.

11.     Plaintiff Cynthia Silhol is a resident of Florida.

12.     Plaintiff Marsha D. Myers is a resident of Kentucky.

13.     Plaintiff Ronald Kevin Myers is a resident of Kentucky.

14.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1331.

## THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681, et seq.

15.     This is a class action seeking damages from Allstate Insurance and Allstate Indemnity for denying and canceling insurance coverage, increasing premium charges for insurance coverage, offering other than the lowest premium available, and requiring payment of premium charges in a lump sum, rather than by installments, all based in whole or in part on information in consumer reports without making certain disclosures to applicants and insureds and others, and for obtaining the consumer reports of non-applicants without a permissible purpose, all in violation of the Fair Credit Reporting Act, 15 U.S.C.§§ 1681 - 1681t ("FCRA").

16.     The Fair Credit Reporting Act, 15 U.S.C. §§ 1681 - 1681t, is a federal statute first enacted in 1971. The FCRA is a consumer protection statute that regulates the activities of consumer reporting agencies and users of consumer reports, and provides certain rights to consumers affected by use of their consumer reports. As a consumer protection statute, the provisions of the FCRA are to be liberally construed in favor of the consumer.

17.     In 1996, the FCRA was further amended to expand the rights of consumers who are adversely affected by use of their consumer reports.

18.     The FCRA provides that consumer reporting agencies may provide consumer reports to persons who intend to use the information in connection with insurance transactions, including underwriting of insurance policies, involving a consumer. 15 U.S.C. § 1681b(a)(3)(C).

19.     The term "consumer report" means any written, oral, or other communication of *any information* by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as

3

a factor in establishing the consumer's eligibility for credit or insurance to be used primarily for personal, family, or household purposes. Consumer reports include credit reports, driving records and prior claims reports. 15 U.S.C. § 1681a(d).

20.    The FCRA provides that if the user of a consumer report takes any adverse action with respect to a consumer based in whole or in part on any information contained in the consumer report, the user of the report must provide notice to the consumer of the adverse action, together with the identity of the consumer reporting agency providing the credit report and other specific information. 15 U.S.C. § 1681m.

21.    The FCRA adverse notice provisions are meant to provide consumers warning that their consumer reports have been used adversely to their interests, in order to provide such consumers with an opportunity to review the information contained in the consumer report and determine whether mistakes in their credit reports might have contributed to such adverse action. Where adverse notice is not provided, the consumer is left without this important legislative protection from errors in such reports.

22.    Congress explicitly limits the reasons for which entities can obtain a copy of a consumer report. The FCRA mandates that the permissible purposes for furnishing reports in connection with insurance transactions not initiated by the consumer are only if the consumer authorizes the agency to provide the report or the transaction consists of a firm offer of credit or insurance to the consumer. 15 U.S.C. §1681b.

23.    The FCRA provides for civil remedies to consumers for violations of the Act, including damages, punitive damages, costs and attorneys fees. 15 U.S.C. § 1681n.

24.    The FCRA also provides that any person who knowingly and willfully obtains information about a consumer from a consumer reporting agency under false pretenses shall be fined

4

under title 18, United States Code, imprisoned for not more than 2 years, or both.  15 U.S.C. § 1681q.

## WOODROW SHELTON, JR.

25.     Plaintiff Woodrow Shelton, Jr., has automobile liability insurance through Allstate Insurance policy no. 000000688593179.  The policy is renewed semi-annually on May 27 and November 27 and was renewed in 2000 and 2001 semi-annually.  Mr. Shelton is the sole named insured under this policy.

26.     Allstate obtained consumer reports on Mr. Shelton and his wife, Deborah Shelton, during the years 2000 and 2001.  Based on information contained in the consumer reports, Mr. Shelton was charged premiums higher than the most favorable (i.e. least expensive) premiums Allstate offered other policyholders.  Mr. Shelton was charged more than the most favorable premium amount for his automobile insurance coverage for the premium paying periods beginning November 27, 2000, May 27, 2001 and November 27, 2001.  The higher premium Allstate charged Mr. Shelton was based in whole or in part on the information contained in Mr. Shelton's and/or his wife's consumer reports.

27.     Neither Allstate nor any Allstate agent or employee contemporaneously provided to Mr. Shelton or to Deborah Shelton the notice and disclosure required by the FCRA, including:

      (a)     notice that the adverse action was taken;

      (b)     the name, address, and telephone number of the consumer reporting agency making the consumer report on Mr. and Mrs. Shelton;

      (c)     a statement that the consumer reporting agency did not make the decision to take the adverse action and was unable to provide Mr. and Mrs. Shelton the specific reasons why the adverse action was taken;

(d)    notice of Mr. and Mrs. Shelton's right to obtain a free copy of a consumer report on them from the consumer reporting agency, indicating the 60-day period for obtaining such a copy; and

(e)    notice of Mr. and Mrs. Shelton's right to dispute with the consumer reporting agency the accuracy or completeness of any information in the claims report furnished by the agency.

28.    Allstate Insurance Company's underwriting procedures uniformly used credit report information in determining what premium amount the applicant would be required to pay and whether the applicant would qualify for Allstate Insurance or Allstate Indemnity coverage. These procedures were uniformly engaged in by the electronic underwriting system of Allstate, rather than through individual decisions by human underwriters. These uniform electronic underwriting procedures are used by Allstate throughout the United States.

29.    Upon information and belief, it is alleged that defendants do not as a matter of practice and procedure provide any notice to property and/or casualty insurance applicants or insureds that information obtained from a consumer report has been used in determining eligibility for the lowest premium or for coverage through Allstate Insurance versus Allstate Indemnity.

## LARRY DANIELS

30.    In 1994, Larry Daniels, Sr., applied to Allstate for an automobile insurance policy and was issued Allstate Indemnity policy no. 000000688593179 providing coverage for himself and for his wife, Sandra Daniels. Larry Daniels, Sr., was not aware at the time the Allstate Indemnity policy was issued to him that Allstate issued preferred rate policies from Allstate Insurance Company and issued more expensive policies from Allstate Indemnity Company.

6

31.    In or about September 1999, Larry Daniels, Sr., discovered that Allstate Insurance Company issued preferred policies to people with good driving records, and that Allstate Indemnity Company issued policies at higher charges for coverage to people who did not have good driving records.  Larry Daniels, Sr., then learned that he had an "Indemnity" policy.

32.    Both Larry Daniels, Sr., and Sandra Daniels had good driving records, with neither having any traffic violations or accidents.  Larry Daniels, Sr., contacted his Allstate agent, explained to the agent that he and his wife had no traffic violations and no accidents, and applied for a new policy from Allstate Insurance Company.  The Allstate agent subsequently advised Larry Daniels, Sr., that Allstate would not issue to Larry Daniels, Sr., an Allstate Insurance Company policy.  The Allstate agent informed Mr. Daniels that Mr. Daniels could not be issued an Allstate Insurance Company automobile policy because although Mr. Daniels had "preferred credit," Mr. Daniels wife, Sandra Daniels, did not.

33.    Neither Allstate nor any Allstate agent or employee ever provided to Larry Daniels, Sr., or to Sandra Daniels:

(a)    the name, address, and telephone number of the consumer reporting agency making the credit report on Mr. and Mrs. Daniels;

(b)    a statement that the consumer reporting agency did not make the decision to take the adverse action and was unable to provide Mr. and Mrs. Daniels the specific reasons why the adverse action was taken;

(c)    notice of Mr. and Mrs. Daniels' right to obtain a free copy of a consumer report on them from the consumer reporting agency, indicating the 60-day period for obtaining such a copy; and

(d)    notice of Mr. and Mrs. Daniels' right to dispute with the consumer reporting agency the accuracy or completeness of any information in the consumer report furnished by the agency.

34.    Allstate Insurance Company's underwriting procedures uniformly used credit report information in determining what premium amount the applicant would be required to pay and whether the applicant would qualify for Allstate Insurance or Allstate Indemnity coverage. These procedures were uniformly engaged in by the electronic underwriting system of Allstate, rather than through individual decisions by human underwriters. These uniform electronic underwriting procedures are used by Allstate throughout the United States.

35.    Upon information and belief, it is alleged that defendants do not as a matter of practice and procedure provide any notice to property and/or casualty insurance applicants or insureds that information obtained from a consumer report has been used in determining eligibility for the lowest premium or for coverage through Allstate Insurance versus Allstate Indemnity.

## JEANNE COCHRAN AND GEOFFREY COCHRAN

36.    On or about August 6, 2001, Jeanne Cochran applied to Allstate for a homeowner's insurance policy. The application was taken over the phone by an Allstate agent in Douglasville, Georgia. Jeanne Cochran was the sole applicant for the homeowner's insurance policy.

37.    Allstate's agent requested and Ms. Cochran provided the names and social security numbers for Ms. Cochran's adult children who resided in Ms. Cochran's home. Ms. Cochran provided Allstate with the social security number of Geoffrey Cochran, her adult son.

38.    Allstate obtained a consumer report for Geoffrey Cochran from a consumer reporting agency and used the information in the consumer report in part to underwrite the homeowner's insurance policy for which Jeanne Cochran applied.

8

39.     Based in whole or in part on the information contained in Geoffrey Cochran's consumer report, Allstate denied Jeanne Cochran's application for homeowner's insurance.

40.     Allstate never received permission from Geoffrey Cochran to obtain a consumer report containing information about him. Allstate did not have a permissible purpose under the FCRA to obtain Geoffrey Cochran's consumer report. 15 U.S.C. § 1681b.

41.     Neither Allstate nor any Allstate agent or employee ever provided to Jeanne Cochran or to Geoffrey Cochran the notice and disclosure required by the FCRA, including:

(a)     notice that the adverse action was taken;

(b)     the name, address, and telephone number of the consumer reporting agency making the consumer report on Geoffrey Cochran or Jeanne Cochran;

(c)     a statement that the consumer reporting agency did not make the decision to take the adverse action and was unable to provide Jeanne Cochran or Geoffrey the specific reasons why the adverse action was taken;

(d)     notice of Jeanne Cochran's or Geoffrey Cochran's right to obtain a free copy of a consumer report on them from the consumer reporting agency, indicating the 60-day period for obtaining such a copy; and

(e)     notice of Jeanne Cochran or Geoffrey Cochran's right to dispute with the consumer reporting agency the accuracy or completeness of any information in the consumer report furnished by the agency.

## TERESITA ENRIQUEZ

42.    In October, 2001, Plaintiff Teresita Enriquez purchased a new Ford automobile and visited Allstate Insurance Company's offices in Sarasota, Florida, where she applied for automobile insurance with Allstate Insurance Company.

43.    After obtaining information from Ms. Enriquez, Allstate Insurance Company electronically obtained a consumer report on Ms. Enriquez and, used the consumer information to underwrite her application for automobile insurance.

44.    Based in whole or in part on Ms. Enriquez's consumer report information, Allstate determined that Ms. Enriquez did not qualify for Allstate Insurance Company's lowest insurance premium, and also determined that Ms. Enriquez would be required to pay the first six months of premiums "up front," rather than in installments.

45.    Allstate informed Ms. Enriquez that to obtain an automobile insurance policy, she would have to pay Allstate Insurance Company the full $781 for the first six month automobile insurance policy.

46.    Further, Ms. Enriquez was offered a policy issued by Allstate Indemnity Company, based upon her credit score and underwriting information.

47.    Allstate Insurance Company's underwriting procedures uniformly used credit report information in determining whether applicants would be required to pay the total premiums for the initial term of the policy, as opposed to being allowed to pay in installments. These procedures were uniformly engaged in by the electronic underwriting system of Allstate Insurance Company, rather than through individual decisions by human underwriters.

48.    These uniform electronic underwriting procedures are used by Allstate Insurance Company throughout the United States.

49.　　By requiring Ms. Enriquez to pay all of her premiums "up front," based in whole or in part upon information in a consumer report, Allstate took adverse action against Ms. Enriquez as defined in the FCRA.

50.　　Ms. Enriquez could not afford to pay her premiums in such a lump sum fashion, and declined coverage with Allstate. She was able to obtain insurance from another source, and was allowed to pay on a monthly basis.

51.　　Neither Allstate nor any Allstate agent or employee ever provided to Ms. Enriquez, the notice and disclosure required by the FCRA, including:

(a)　　notice that the adverse action was taken;

(b)　　the name, address, and telephone number of the consumer reporting agency making the consumer report on Ms. Enriquez;

(c)　　a statement that the consumer reporting agency did not make the decision to take the adverse action and was unable to provide Ms. Enriquez the specific reasons why the adverse action was taken;

(d)　　notice of Ms. Enriquez's right to obtain a free copy of a consumer report on them from the consumer reporting agency, indicating the 60-day period for obtaining such a copy; and

(e)　　notice of Ms. Enriquez's right to dispute with the consumer reporting agency the accuracy or completeness of any information in the claims report furnished by the agency.

52.　　Upon information and belief, it is alleged that defendants do not as a matter of practice and procedure provide any notice to property and/or casualty insurance applicants or

insureds  that the information obtained from a consumer report has been used in determining eligibility for installment or periodic payment of premiums.

### CYNTHIA SILHOL

53.     In May, 2000, Cynthia Silhol applied for automobile insurance coverage with Allstate Insurance Company at the Killingsworth Insurance Agency in Spring Hill, Florida.

54.     After obtaining information from Ms. Silhol and quoting a premium rate to Ms. Silhol, the Allstate agent asked for Ms. Silhol's social security number. Without advising her that Allstate was doing so, Allstate Insurance Company then electronically obtained a consumer report on Ms. Silhol and, used the consumer report information to determine whether to issue Ms. Silhol a policy.

55.     Based in whole or in part on the information obtained from Ms. Silhol's consumer report, Allstate refused to issue Ms. Silhol an automobile insurance policy with either Allstate Insurance Company or Allstate Indemnity Company. Ms. Silhol was not given notice of the adverse action taken, but asked why she was not extended automobile insurance coverage.  Only upon her inquiry, Ms. Silhol was advised that she was "rejected" for coverage based upon the computer inquiry into her credit history.

56.     Neither Allstate nor any Allstate agent or employee ever provided to Ms. Silhol:

> (a)     the name, address, and telephone number of the consumer reporting agency making the credit report on Ms. Silhol;

> (b)     a statement that the consumer reporting agency did not make the decision to take the adverse action and was unable to provide Ms. Silhol the specific reasons why the adverse action was taken;

(c)  notice of Ms. Silhol's right to obtain a free copy of a consumer report on them from the consumer reporting agency, indicating the 60-day period for obtaining such a copy; and

(d)  notice of Ms. Silhol's right to dispute with the consumer reporting agency the accuracy or completeness of any information in the claims report furnished by the agency.

57.  Allstate Insurance Company's underwriting procedures uniformly used consumer report information in determining whether applicants would receive insurance from Allstate. These procedures were uniformly engaged in by the electronic underwriting system of Allstate Insurance Company, rather than through individual decisions by human underwriters.

58.  These uniform electronic underwriting procedures are used by Allstate Insurance Company throughout the United States.

59.  By rejecting Ms. Silhol's application for automobile insurance based in whole or in part upon information in a consumer report, defendants took adverse action against Ms. Silhol as defined in the FCRA.

60.  Plaintiff subsequently obtained a copy of her credit report and determined that there were numerous mistakes contained within the report from Trans Union, a consumer reporting agency which had provided the electronic information to Allstate.

61.  Allstate Insurance Company and Allstate Indemnity Company failed to provide Ms. Silhol with any notification, oral, written or electronic, advising Ms. Silhol of her rights to obtain a free copy of her credit report in order to determine whether mistakes in her credit report might have contributed to the adverse action, nor did Allstate comply with the requirements of 15 U.S.C. § 1681m.

13

62.    Upon information and belief, it is alleged that defendants do not as a matter of practice and procedure provide any notice to property and/or casualty insurance applicants or insureds that the information obtained from a credit report has been used in determining eligibility for insurance with Allstate.

## MARSHA D. MYERS AND RONALD KEVIN MYERS

63.    Plaintiffs Marsha D. Myers and Ronald Kevin Myers carried automobile insurance with Defendant Allstate for a number of years.

64.    In 2001, the premium for Plaintiffs Marsha D. Myers and Ronald Kevin Myers' automobile insurance rose dramatically despite the fact that they had made no claims under their policy and had received no moving or traffic violations.

65.    Allstate examined Plaintiffs Marsha D. Myers and Ronald Kevin Myers' credit reports immediately prior to increasing the premium for their automobile insurance policy.

66.    When Plaintiffs Marsha D. Myers and Ronald Kevin Myers asked their Allstate agent if their premium increase was based on information contained in their consumer reports, the agent denied that a credit check had been performed at all and stated that the rate increases were "across the board" for all policyholders.

67.    Neither Allstate nor any Allstate agent or employee ever provided to the Myers:

    (a)    the name, address, and telephone number of the consumer reporting agency making the credit reports on the Myers;

    (b)    a statement that the consumer reporting agency did not make the decision to take the adverse action and was unable to provide the Myers the specific reasons why the adverse action was taken;

14

(c)    notice of the Myers' right to obtain a free copy of a consumer reports on them from the consumer reporting agency, indicating the 60-day period for obtaining such a copy; and

(d)    notice of the Myers' right to dispute with the consumer reporting agency the accuracy or completeness of any information in the claims report furnished by the agency.

## CLASS ACTION ALLEGATIONS

68.    Plaintiffs bring this action pursuant to Rule 23, Fed. R. Civ. P. individually and on behalf of other persons similarly situated.  Plaintiffs Shelton, Daniels, Jeanne Cochran, Enriquez, Silhol and Myers seek to represent the following class of consumers hereinafter referred to as "Class A":

> Residents of the United States of America who on or after January 1, 1994, were denied, canceled, or charged increased rates or other sub-optimal terms for insurance by Allstate Insurance Company or Allstate Indemnity Company, based in whole or in part on information in consumer reports without adequate disclosures being provided to them as required by the Fair Credit Reporting Act.

To be excluded from Class A are persons employed by or otherwise related to Allstate Indemnity Company, Allstate Insurance Company, their successors, or affiliates.

69.    Plaintiffs Shelton, Daniels, Jeanne Cochran, Enriquez, Silhol and Myers each were subjected to adverse action due to information contained in consumer reports.  Plaintiff Shelton is an insured whose premiums were raised.  Plaintiff Daniels is an applicant who was denied the most favorable terms for insurance.  Plaintiff Jeanne Cochran is an applicant who was denied insurance.  Plaintiff Enriquez is an applicant who was required to pay her premiums in advance.  Plaintiff Silhol is an applicant whose application was rejected.  Plaintiffs Myers were insured whose premiums were

raised upon renewal. While the type of adverse action to which they were subjected differed, each

plaintiff did not receive the notice required by law whenever any type of adverse action is taken.

70.    Plaintiffs Shelton, Daniels, Jeanne Cochran, Enriquez, Silhol and Myers on behalf

of Class A bring the claims asserted in Counts I, III, and IV of this complaint.

71.    Plaintiff Geoffrey Cochran seeks to represent the following class of consumers,

hereinafter referred to as "Class B":

> Residents of the United States of America for whom Allstate
> Insurance Company or Allstate Indemnity Company obtained
> consumer reports, in connection with the underwriting of an
> insurance policy application submitted by another person on or after
> February 4, 2000.

To be excluded from Class B are persons employed by or otherwise related to Allstate Indemnity

Company, Allstate Insurance Company, their successors, or affiliates. Plaintiff Geoffrey Cochran

did not apply for any insurance with Allstate and never was furnished a firm offer of insurance.

Nonetheless, Allstate improperly obtained his consumer report.

72.    Plaintiff Geoffrey Cochran on behalf of Class B brings the claims asserted in Counts

II, IV, and V of this complaint.

### RULE 23(A) ALLEGATIONS

73.    Pursuant to Rule 23(a), this action may be maintained as a class action because all

procedural elements are satisfied, as set forth below:

### 1. NUMEROSITY

74.    Allstate is one of the largest issuers in the United States. The number of consumers

with respect to whom Allstate took an adverse action under the FCRA and failed to provide the

information and notices required under the FCRA is in excess of one million. The exact number and

identity of the members of Class A is unknown to Plaintiffs but can easily be determined from Allstate's records.

75.    The number of consumers for whom Allstate obtained consumer reports with no permissible purpose and in violation of the FCRA currently is unknown to plaintiffs, but plaintiffs believe that the proposed class is in the thousands or tens of thousands. The exact number and identity of the members of Class B can easily be determined from Allstate's records.

76.    Class A and Class B are so numerous that it would be impractical to join all of the members of each Class within the meaning of Rule 23(a)(1).

## 2. COMMONALITY

77.    On behalf of Class A, the representative Plaintiffs bring claims which raise questions of law and fact common to all members of Class A, as contemplated by Rule 23(a)(2). Common issues include:

(a)    Whether Allstate violated the FCRA when Allstate took adverse actions against applicants for insurance based in whole or in part on information contained in consumer reports, failed to properly advise the applicants that adverse actions had been taken against them, and failed to properly provide the applicants with the information and notices required under the FCRA;

(b)    Whether Allstate violated the FCRA when Allstate took adverse actions against applicants for insurance based in whole or in part on information contained in consumer reports without providing the notices required under the FCRA;

(c)    Whether Allstate violated the FCRA when Allstate took adverse actions against existing Allstate insureds based in whole or in part on information

contained in consumer reports without providing the notices required under the FCRA;

(d)    Whether form notices by Allstate to Allstate insureds that they might have been issued a policy by Allstate Indemnity is sufficient notice as required by the FCRA;

(e)    Whether form notices by Allstate that "lower rates" could not be offered and that "it might be a good idea to check your report" are sufficient notices of adverse action as required by the FCRA;

(f)    Whether Allstate's actions in failing to provide adequate notice as required by the FCRA were willful;

(g)    Whether Allstate's actions in failing to provide adequate notice as required by the FCRA were done in reckless disregard of the consumers' rights;

(h)    Whether Allstate's actions in failing to provide adequate notice as required by the FCRA was a willful violation of the FCRA;

(i)    Whether Allstate's actions in failing to provide adequate notice as required by the FCRA was a negligent violation of the FCRA; and

(j)    Whether members of Class A are entitled to an award of statutory damages under the FCRA.

78.    On behalf of Class B, the representative Plaintiff, Geoffrey Cochran brings claims which raise questions of law and fact common to all members of Class B, as contemplated by Rule 23(a)(2).  Common issues include:

(a)    Whether Allstate engages in a practice of obtaining consumer reports during the course of underwriting insurance applications relating to people other than the applicant;

(b)    Whether Allstate's practice of obtaining such consumer reports violates the FCRA;

(c)    Whether Allstate acted without a permissible purpose in connection with its practice of obtaining consumer reports relating to people other than the applicant;

(d)    Whether Allstate willfully violates the strictures of the FCRA by obtaining consumer reports without a permissible purpose;

(e)    Whether Allstate obtained consumer reports for individuals other than the applicants using false pretenses within the meaning of the FCRA;

(f)    Whether Plaintiff and members of Class B are entitled to recover statutory damages under the FCRA.

### 3. TYPICALITY

79.    In accordance with the requirements of Rule 23(a)(3), the representative Plaintiffs' claims are typical of the claims of all other members of each Class, and the representative Plaintiffs have no interests which are adverse or antagonistic to the interests of the members of the Classes. The representative Plaintiffs' claims are typical of the claims of the members of Class A because all such claims arise from a series of identical business practices, or a common course of conduct, involving Allstate's failure to notify consumers that adverse actions had been taken against them and Allstate's failure to provide other required information to consumers, in violation of the FCRA.

80.     Geoffrey Cochran's claims are typical of the claims of the members of Class B because all such claims arise from a series of identical business practices, or a common course of conduct, involving Allstate obtaining consumer reports during the course of underwriting insurance applications relating to people other than the applicant, which is an impermissible purpose and violates the FCRA.

### 4. ADEQUACY

81.     In accordance with the requirements of Rule 23(a)(4), the representative Plaintiffs and their counsel will fairly and adequately represent and protect the interests of each member of Class A and Class B.  The representative Plaintiffs and the Classes share common interests, and the representative Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in class action litigation.

### RULE 23(B)(3) ALLEGATIONS

82.     Questions of law and fact common to the Class Members clearly predominate over any questions affecting only individual members.

83.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Most individual Class members have little ability to prosecute an individual action due to the complexity of the issues involved in this litigation, the significant costs attendant to litigation on this scale, and the comparatively small, although significant, damages suffered by individual Class members.  Absent a class action, Class members will continue to suffer damages.  Allstate's violations of federal law will proceed without remedy while Allstate continues to retain the proceeds of its higher premium insurance rates.

84.     This action will result in an orderly and expeditious administration of Class claims. Economies of time, effort, and expense will be fostered and uniformity of decisions will be insured.

20

85.     This action presents no difficulty that would impede its management by the Court as a class action.  When the liability of Allstate has been adjudicated, the damages of each class member can be administratively determined.  A class action is superior to other available methods for the fair and efficient adjudication of each class member's claim.

## COUNT I

### WILLFUL NONCOMPLIANCE WITH FCRA
### AS TO CLASS A

86.     Plaintiffs repeat and re-allege the allegations set forth above as if fully set forth herein.

87.     Allstate willfully fails to comply with the notice requirements for users of consumer reports imposed under the FCRA.  Allstate's adopted corporate policy and Allstate's actual practice and procedure is to not advise consumers of a denial or cancellation of, or increase in any charge for, insurance when such adverse action is based in whole or in part on the information contained in a prior claims experience report, a motor vehicle department driving record report, or a credit history report.

88.     Allstate's adopted corporate policy and Allstate's actual practice and procedure is to not provide consumers with the notices and other information required under the FCRA in the event of a denial or cancellation of, or increase in any charge for, insurance when such adverse action is based in whole or in part on the information contained in a consumer report.

89.     Allstate's adoption of its policy and Allstate's practice and procedure of failing to notify consumers that an adverse action has been taken against them, and failing to provide consumers with notice of the consumers' rights and other information required by the FCRA, is in reckless disregard of the consumers' rights.

21

90.    Allstate's adoption of its policy and Allstate's practice and procedure of failing to notify consumers that an adverse action has been taken against them, and failing to provide consumers with notice of the consumers' rights and other information required by the FCRA, is in conscious disregard of the consumers' rights.

91.    Each Plaintiff and each member of the Class has sustained damages as a result of Allstate's failure to comply with the FCRA. Each Plaintiff and each member of the Class is also entitled under Section 617 of the FCRA to damages of not less than $100 and not more than $1,000. Each Plaintiff and each member of the Class is also entitled to attorneys' fees as provided in the FCRA.

## COUNT II

### WILLFUL NONCOMPLIANCE WITH FCRA
### AS TO CLASS B

92.    Plaintiffs repeat and re-allege the allegations set forth above as if fully set forth herein.

93.    Allstate willfully violates the FCRA by obtaining consumer reports in connection with the underwriting of insurance policy applications relating to people other than the applicant.

94.    Allstate's adopted corporate policy and Allstate's actual practice and procedure is to obtain consumer reports on individuals other than the applicant during the underwriting of an application for insurance. This policy and practice is not supported by a permissible purpose and violates the FCRA.

95.    Allstate's policy, practice and procedure of obtaining consumer reports in connection with the underwriting of insurance policy applications relating to people other than the applicant is in reckless disregard of the consumers' rights.

22

96.    Allstate's policy, practice and procedure of obtaining consumer reports during the course of underwriting insurance applications relating to people other than the applicant is in conscious disregard of the consumers' rights.

97.    Geoffrey Cochran and each member of Class B has sustained damages as a result of Allstate's failure to comply with the FCRA.  Geoffrey Cochran and each member of Class B is also entitled under Section 617 of the FCRA to damages of not less than $100 and not more than $1,000. Each Plaintiff and each member of the Class is also entitled to attorneys' fees as provided in the FCRA.

## COUNT III

## NEGLIGENT NONCOMPLIANCE WITH FCRA
## AS TO CLASS A

98.    Plaintiffs repeat and re-allege the allegations set forth above as if fully set forth herein.

99.    Allstate negligently fails to comply with the notice requirements for users of consumer reports imposed under the FCRA.  Allstate fails to advise consumers of a denial or cancellation of, or increase in any charge for, insurance based in whole or in part on information contained in consumer reports as defined by the FCRA.  Allstate negligently fails to provide consumers with the notices and other information required under the FCRA in the event of a denial or cancellation of, or increase in any charge for, insurance, based in whole or in part on the information contained in a consumer report.

100.    Allstate's conduct wrongfully violates the notice provisions for users of consumer reports under the FCRA.

23

101.    Each Plaintiff and each member of Class A has sustained damages as a result of Allstate's failure to comply with the FCRA.

## COUNT IV

### NEGLIGENT NONCOMPLIANCE WITH FCRA
### AS TO CLASS B

102.    Plaintiffs repeat and re-allege the allegations set forth above as if fully set forth herein.

103.    Allstate negligently fails to comply with the FCRA by obtaining consumer reports in connection with the underwriting of insurance policy applications relating to people other than the applicant.

104.    Allstate's conduct wrongfully violates the notice provisions and permissible purpose provisions for users of consumer reports under the FCRA.

105.    Each Plaintiff and each member of Class B has sustained damages as a result of Allstate's failure to comply with the FCRA.

## COUNT V

### INJUNCTIVE AND DECLARATORY RELIEF AS TO CLASS A

106.    Plaintiffs re-allege and incorporate herein the allegations set forth above as if fully set forth herein.

107.    Allstate continues to violate the rights of its applicants and customers in failing to provide notice of adverse action under the FCRA, and if not enjoined from such violations by the Court, Allstate will continue to engage in conduct which disregards the rights of consumers.

108.    Unless Allstate is ordered to provide to Plaintiffs the adverse notice required by the FCRA, Plaintiffs will continue to suffer irreparable injury for which there is no adequate remedy at law.

109.    Upon information and belief, the acts complained of herein were done by Allstate as part of a pattern and practice of failing to provide the required FCRA adverse action notice to persons whose consumer information have been obtained and used in whole or in part to underwrite the consumers' applications for insurance.

110.    Upon information and belief, Allstate maintains no procedures designed to insure that the required FCRA notices will be provided to the members of Class A, or such procedures which are maintained are inadequate to insure that the required notifications will be provided.

111.    Regarding those members of Class A who have already had adverse action taken on their insurance premiums or applications, unless Allstate is ordered to provide to them the required written notifications, they will continue to suffer irreparable injury for which there is no adequate remedy at law.

## COUNT VI

### INJUNCTIVE AND DECLARATORY RELIEF AS TO CLASS B

112.    Plaintiffs re-allege and incorporate herein the foregoing allegations.

113.    Allstate continues to violate the rights of consumers by obtaining consumer reports on them in connection with the underwriting of an insurance policy application submitted by another person, and if not enjoined from such violations by the Court, Allstate will continue to engage in conduct which disregards the rights of consumers.

114.    Unless Allstate is ordered to cease and desist obtaining consumer reports on consumers in connection with the underwriting of an insurance application by another person, the consumers will continue to suffer irreparable injury for which there is no adequate remedy at law.

115.    Upon information and belief, the acts complained of herein were done by Allstate as part of a pattern and practice of obtaining consumer reports for impermissible purposes under the FCRA and under false pretenses.

116.    Upon information and belief, Allstate maintains no procedures designed to insure that consumer reports are not obtained for impermissible purposes or under false pretenses.

117.    Regarding those members of Class B who have already had their consumer reports obtained for impermissible purposes and/or under false pretenses, unless Allstate is ordered to discontinue this practice, they will continue to suffer irreparable injury for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, demand judgment against Allstate Indemnity and Allstate Insurance as follows:

(a)    Certify this action as a class action and designate Plaintiffs as the representatives thereof;

(b)    Award each Plaintiff and member of each Class either (i) the actual damages sustained by such Plaintiff or member of each Class as a result of Allstate's willful failure to comply with the FCRA, or (ii) damages of not less than $100 and not more than $1,000;

(c)    Award each Plaintiff and member of each Class the actual damages sustained by them as a result of Allstate's negligent failure to comply with the FCRA;

26

(d)     Order Allstate to disgorge, restore, and return to Plaintiffs and the members of each

Class all funds, together with interest as provided by law, which Allstate wrongfully collected;

(e)     Award Plaintiffs and the members of each Class reasonable attorneys' fees,

prejudgment interest, and the costs and expenses incurred in this action, including experts' fees; and

(f)     Grant such other relief as may be appropriate under the circumstances.

### **TRIAL BY JURY**

Plaintiffs demand a trial by jury of all issues so triable in this action.

Respectfully submitted,

JAMES, HOYER, NEWCOMER & SMILJANICH

By: _____  *by Trum th Howell,*

Terry A. Smiljanich
4830 W. Kennedy Boulevard
Suite 550
Tampa, FL 33609
(813) 286-4100

HOWELL & JACKSON, PLLC
R. Scott Jackson, Jr. #13839
144 Second Avenue, North
Suite 450
Nashville, TN 37201
(615) 313-8188
Counsel for Plaintiff Woodrow Shelton, Jr.
And Plaintiffs' Liaison Counsel

McCALLUM LAW FIRM, LLC
Charles A. McCallum, III
2062 Columbiana Road
Vestavia Hills, AL 35216
(205) 824-7767

DOFFERMYRE SHIELDS CANFIELD
KNOWLES & DEVINE
    Kenneth S. Canfield
    1355 Peachtree Street, N.E.
    The Peachtree, Suite 1600
    Atlanta, GA 30309
    (404) 881-8900

LAW OFFICE OF A. THOMAS STUBBS
    A. Thomas Stubbs
    Suite 201
    545 N. McDonough Street
    Decatur, GA 30030
    (404) 378-3633

SHEPHERD & FINKELMAN, LLC
    Scott R. Sheperd
    Suite 200
    117 Gayley Street
    Media, PA  19063
    (610) 891-9880

## CERTIFICATE OF SERVICE

    I hereby certify that true and exact copies of the foregoing are being served via U.S. mail, postage prepaid, on the 26th day of November, 2002, to all counsel on the Amended Joint List of Attorneys for Purposes of Service filed with the Court.

Trevor W. Howell



**SONNENSCHEIN NATH & ROSENTHAL**

8000 Sears Tower
233 South Wacker Drive
Chicago, IL 60606
312.876.8000
312.876.7934 fax
www.sonnenschein.com

*Chicago*
*Kansas City*
*Los Angeles*
*New York*
*San Francisco*
*St. Louis*
*Washington, D.C.*
*West Palm Beach*

**Valerie Tatem Bomar**
312 876-8187
vbomar@sonnenschein.com

December 23, 2002

<u>VIA U.S. MAIL</u>

Clerk of the Panel
Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary Bldg.
One Columbus Circle, N.E., Room G-255
North Lobby
Washington, D.C. 20002-8004

Re:    In Re Allstate Insurance Company Underwriting and Rating Litigation
        MDL Docket No. 3:02-MD-1457-ALL CASES

Dear Clerk:

Pursuant to 7.5(e) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Allstate Insurance Company and Allstate Indemnity Company hereby notify the Panel of a potential tag-along action initially filed in the District Court of Cameron County, Texas, and subsequently removed to the United States District Court Southern District of Texas, Brownsville Division. The action is styled: Michael Sanchez, P.H. King, Gilberto Medellin, Hector Quintanilla, Luz Bonilla, on behalf of themselves and others similarly situated v. Allstate Corporation, Allstate Insurance Company, Allstate Texas Lloyd's, Allstate Fire and Casualty Insurance Company, Allstate County Mutual Insurance Company, Allstate Indemnity Company, John Lesley, agent, Jaime Pena, agent, and John Terry, agent ("Sanchez Complaint"). A copy of the Sanchez Complaint and removal papers are enclosed.

Although the Sanchez Complaint is brought pursuant to Texas statutory and common law, it is clear from just a cursory review of the allegations that Plaintiffs are challenging the notice practices of the Defendant companies in connection with their use of consumer reports, specifically credit reports, to underwrite and rate insurance policies, practices which are expressly governed by the Fair Credit Reporting Act ("FCRA") -- the act at issue in this MDL proceeding.



Very truly yours,

Valarie Tatem Bomar

Enclosures

cc:    Service List